The first case this afternoon is case number 4-24-0368, People v. Mark Marshall. I'd like to begin with appearances. First for the appellant. James Waller for the State Appellate Defender's Office, representing Mark Marshall. Thank you. And for the appellee? Lauren Hadley, 7-11 student, representing the state of Illinois. And David Robinson as supervising attorney. All right. Thank you, counsel. Mr. Waller, you may begin with your argument. Thank you, Your Honor. As I said, may it please the court, counsel, my name is James Waller. I'm with the Appellate Defender's Office. It's my pleasure to represent Mark Marshall today. We're here today because the trial court committed reversible error in one, admitting irrelevant, unfairly prejudicial testimony, and two, issuing improper jury instructions, both of which denied Mark a fair trial. I'll first address the erroneous admission of testimony under Rule 404 that sought to have Mark convicted for having a bad character. I'll then turn to the trial court's improper jury instructions, which distorted statutory terms and lowered the state's burden of proof. Because of those errors, we're asking this court to vacate the conviction and remand the case for a new trial. First, the trial court abused its discretion by allowing the state to introduce irrelevant and unfairly prejudicial character testimony from Anna DeJanes and Michael Watkins. We have kind of a Russian nesting doll of errors that led up to the admission of this pure propensity evidence. I'm sorry, did somebody say something? I apologize. I thought I heard something. The errors began when the state sought to admit certain statements from Mark's police interview in their case in chief. Again, Mark hadn't testified yet. He didn't testify ever at all. He put on no evidence. But in his interview, the state... Excuse me, but this was not introduced as impeachment evidence, was it? The trial court here first went through an analysis of 404B and indicated that it wasn't going to be allowed pursuant to that, but that FT, after the court, I will just say plainly hemmed and hawed a little bit, said that it was admissible as false exculpatory evidence. Why wasn't that appropriate? Showing consciousness of guilt. Sure, understood, Your Honor. And it's a bit sticky. We have to really look at what the questions were in the interview. The police asked three questions there at the end that defense counsel objected to being admitted. The first was, have you ever sent this picture or a one like it to any adult females? Answer was no. Obviously, that one's clearly irrelevant. It's only collateral. It shouldn't have come in. Second question, ever sent a picture like that to a juvenile female, someone younger than you, under 18 years old? Well, that's kind of a two-part question. And there might be some false exculpatory as to sending pictures to BW, but not as to sending pictures to anybody else, particularly when he was a minor himself. Maybe another example might highlight why it would be problematic to allow the state to introduce that type of evidence simply to rebut. My client was on trial for robbery, and he had a robbery in his past that was maybe too old for Montgomery, not otherwise admissible, but it could come in as, it would otherwise be a prior bad act, but it's inadmissible. Or maybe even because it's too relevant to the robbery he's being charged with. If at the beginning of the police interview, the officer says, did you ever commit any robberies? And he says, no. Well, the state can't use that to get around the prior bad act ruling. They can't front a broad question about past behavior that maybe part of it's relevant to this, but a lot of it isn't. And then only use, only contradict the part that's not relevant. If DeJanes had come in and said, this is a false exculpatory because I saw him send a picture to BW, then great. Then we've got something that's on point and it's, and it's contradicted. It's no longer a collateral matter, but DeJanes- You're saying that because it's related to the offense with which the defendant's being charged, is that your point? That's correct. It was, all DeJanes could testify to is that he had sent it to her also as a minor. That's not relevant to any element that had to be proven, anything that was on trial. It's only really showed a propensity to send these type of pictures. That's forbidden. Well, but doesn't it show he was lying to the police when he gave that answer and therefore one could infer he was lying with regard to sending the picture to BW? That's certainly, that's certainly the argument, but we don't get to just introduce every, any, every arguably dishonest thing that somebody says to a police, because like I said, it goes right to that robbery thing. Otherwise, every interrogation would begin with that question to, to just get around this, this rule altogether. They could always say, Hey, or, you know, have you ever committed a crime? No. Aha. Well, I've got proof of all admissible, but because you denied it, that shows consciousness of guilt. And we're going to eviscerate the entire rule about these prior bad acts with this one trick that justices hate. You know, the rule is meant to, consciousness of guilt has to be about something exculpatory to this case, not just generally damning or bad character. Unless you're trying to show propensity is the only way that makes anything he did with DeJanes relevant. And then that brings us, so that's the problem with DeJanes' testimony. Then we've got Michael Watkins' testimony, which was irrelevant, where this church policy violation was used to impute criminal intent. The trial court allowed this pastor of a large influential church here in Bloomington, whose sole purpose of testifying was to speculate that Mark maybe violated some church social policies that nobody could even testify Mark had even been trained on. The state- But wasn't it introduced, they were anticipating what the testimony of the defendant would be. Is that not correct? And so put it on for that reason and the trial court allowed it to show what the defendant's intent may have been. That's absolutely the argument they made. That's not a proper argument. We have rebuttal- Why not? Because that's for rebuttal. You can't rebut something in advance. It's not relevant on its own, especially since they couldn't prove he even received the policies. You have to wait for him to put that into evidence and then rebut it. The state gets a whole second bite at the apple on rebuttal, but they don't get to do it in their case in chief when the defense has stood on its silence. Again, otherwise these rules where these things can only come into rebuttal mean nothing because we can always say we were anticipating he was going to say something, so we had to rebut it up front. Rebuttal comes at rebuttal time. The state used this testimony to argue that violating a church rule indicated criminal intent. It's both legally and logically unsound. Violating a church's internal policy does not suggest an intent to commit a felony offense, but it looks bad and it's unfairly prejudicial to bring in his pastor or his guidance counselor or a dowager aunt to come in and testify that he's not living by the word. So the state failed to show he was ever trained on the policies which made the testimony speculative and non-responsive to any issue and also irrelevant while being grossly prejudicial just by showing a pastor coming in and giving disapproval of this guy. The state's justifications for these witnesses were insufficient. The state argues that Mark opened the door to this evidence by denying involvement in the crime. I mean, we got black letter law on that from SMART. You can't just from people be SMART. Just pleading not guilty and standing silent at trial does not open the door to anything. To open the door, the state has to point to evidence put into trial by the opposing party, by the defense in this case, and then rebut it at the appropriate time to contradict it. Mark didn't testify or put in any evidence. He could not have opened the door to this testimony and they don't get to anticipate that way. The state can't create its own grounds for impeachment or rebuttal by introducing the prior out-of-court statements and then impeaching them with prior bad acts. I mean, it's classic textbook Rule 404 violation. And the admission of these violating testimonies was not harmless. This case was closely balanced. There's no smoking gun of direct evidence of solicitation. The evidence was vague and incomplete. The jury had to interpret and parse ambiguous digital communications with emojis and slang while whole portions of context and conversations had been deleted, and not by Mark either. So the improperly admitted propensity evidence and bad scales against the defendant in this case, especially when we consider the second issue. The trial court erred in giving jury instructions that included definitions for common everyday words and erred further when those definitions were not accurate or impartial. Words of common usage don't need to be defined in jury instructions under Illinois law. The only time a court should do that is when it's a legal term of art with a specialized meaning in the law, or it's so ambiguous or technical that an ordinary juror may not understand it. Seduce and entice don't meet those criteria. We know that because the state said so. The state said these are common words with plain meanings when it requested the jury instruction. Defense counsel objected, and the court did it anyway. When we give definitions to some words in a statute, we improperly emphasize those words, and it may steer the jury away from a holistic reading of the statute, which is what they're supposed to pay attention to all of the words. Excuse me, counsel. Don't we need to look at all of the jury instructions that the jury was given? And here, let's assume these might not have been necessary as opposed to incorrect, but there were other instructions that the jury was given that really, I think, certainly were correct, led the jury to understand what the law was here. How was this error? Your Honor, none of the other instructions that the jury received said, don't focus on any particular words in the statute. You got to read the statute as a whole. If the curative instruction had been that specific, maybe we'd have an argument here to go back and forth about. There was nothing like that in the jury instructions, nor should there be. The only reason you'd have to warn the jury about taking words in isolation is if you unfairly, unnaturally, unnecessarily define them in isolation. So none of the other jury instructions was a cure-all here, curative. But the defense did not, I'm sorry, go ahead, Justice Lewis. Go ahead. The defense did not offer any instructions of its own, did they? No, they just objected to it being defined at all, and that's enough. Because the state never made a case that they need to be defined because the state admitted that they were common and everyday words. We want the jurors to bring their common, everyday understanding of these words in the courtroom. We presume that the legislature chose these words with the knowledge of what the jury would understand. So all the defense counsel had to do was object and say, we don't need to define these words. And when the court went over that, it abuses discretion there. These definitions created a risk that the jury would interpret the words in artificially narrow or overly broad manners and remove them from their common definitions. Mr. Waller, that's what I was going to ask you about. How did this mislead the jury or prejudice defendant? You just started talking about that, and I really would like you to hone in on it. Of course, Your Honor. So in three different ways. First, the definitions were outdated and cherry-picked to favor the prosecution. I want to talk about that for a minute. The state chose the definition for seduce from a 1999 Webster's New World College Dictionary, a dictionary from before any of these people were born. For entice, the prosecution reached further back to a 1971 edition of Random House Dictionary from before I was born. And I'm certain that it's not because the state only had half of the one dictionary and half of the other dictionary and was doing their best to be objective here. They went back half a century to pick the broadest definition of the words without any indication that modern usage, especially modern usage today, tracks how the words were used in the Nixon administration. So they gave no explanation for why a dictionary published before the invention of the modern internet and mobile communications best captured the legislative intent of a 2009 statute about using electronic devices to groom somebody in the 2020s. And the problem is not just that the dictionaries were but the definitions also were not impartial. The definition of seduce was improperly stripped of its corrupting and sexual nature. The court instructed the jury that seduce means to persuade or tempt. That's incomplete. We included modern usage of the 2024 definitions in our brief. Seduce usually means to lead a straying, corrupt, or to persuade someone to have sexual intercourse or some sexual activity. By removing the sexual and corruption aspects, which is key to the purpose of this whole legislation, the court lowered the state's burden. It allowed the jury to focus on whether or not any type of persuasion or temptation had been attempted, even if totally unrelated to sexual conduct or corruption. The definition of entice... I'm sorry, go ahead, Your Honor. Well, just on that point, counsel, this jury was given the definitional instructions related to grooming, including the definitional instruction on sexual conduct, which was intentional or knowing touching or fondling by the victim or the accused directly or through clothing of a sex organ or breast of the victim or sex organ or, let's see, for purposes of sexual arousal. I mean, that was explicit. That was a specific instruction, a separate instruction. So I'm not sure how, in response to Justice Harris's question, how this was misleading. Well, Your Honor, to be perfectly honest, I don't see how that instruction is at all a curative or cancels the fact that these instructions were not accurate or complete or that they focused the jury on certain unnecessarily focused aspects of the statute. We give that definition because the word sexual conduct is not used in everyday usage. So those are important. When we give special definitions, especially ones that are overly broad and slanted, like this, we change the elements of the offense. It becomes a structural due process problem when we're focusing on a definition that there's no reason to believe the legislature was thinking about 1971 usage when they passed the statute in 2009. So the definition of sexual conduct, Your Honor, is just simply non-responsive to, well, we don't need to focus on the corruptive sexual aspects of seduction. In fact, Your Honor, I think that focusing on that it only means to persuade or tempt, which is not fully true, it has other connotations. By focusing on that, we take away the holistic read of the statute that suggests you need to focus on the sexual aspect as well. So that's the other problem with seduce. Within TICE, they said that, once again, redundantly, that it means persuade or induce. So apparently we need three definitions for the word persuade in the statute here. But modern dictionaries define entice as involving elements of arousal, hope, and desire. By reducing entice to a synonym for persuade or induce, the instruction broadens the statute in a way that favored the prosecution, making it easier to find guilt without requiring any element of enticement through attraction or desire. So again, this is- The trial counsel submit more modern definitions. No, Your Honor, she objected to- To support the opportunity to see that there are different definitions. And I'm sorry, Your Honor, I spoke over part of your question. I apologize. The trial counsel submit definitions from more modern sources to show that there is a different definition today than there was when these were submitted. She didn't, Your Honor. My understanding of the record is she objected to giving you the definitions. She did not provide alternate definitions. I think that if she had done so, that would have invited the error here a bit because no definitions needed to be given. Or it would have given the court an opportunity and maybe reconsidered. That's true. It might have. It might have. We think that there's still plain error here. And again, it was contemporaneously objected to in giving the instructions at all. I believe- My argument is it's two-part error, giving the instruction at all and then giving these particular instructions. So the court still erred there. There was a contemporaneous objection. It was not included in the post-trial motion. But it's still- We're still talking about plain error a couple of different ways. First, again, first wrong. We had clear and obvious error in giving the instructions at all. It was not necessary, especially not necessarily to go back to 1971, over counsel's objections and clearer when the definitions were, like I said, so cherry-picked. But the evidence was closely balanced here. Like I said, no smoking gun. It was a lot of innuendo. But also, as I said, it modified the elements. I think you could argue that it modified the elements of what the crime was. And that makes it a structural error when these type of jury instructions- When we give definitions for words that are part of the that don't need to be given are common everyday words, that's a structural error. So it's plain error a couple of different ways. So due to these errors individually or in the aggregate, this court should vacate Mark's conviction and remand the case for a new trial. If there are no other questions, I'll speak with you again during my rebuttal. All right. Thank you, Mr. Waller. You'll have time in rebuttal. Ms. Hadley, you may proceed with your argument. May it please the court, counsel. My name is and I am a 711 student representing the state of Illinois. Defendant asked this court to interfere with the sound discretion of the trial court with respect to two issues. First, the admission of relevant witness testimony. And second, the decision to give additional jury instructions. The state argues that the trial court properly admitted the relevant testimony of Anna DeJanes and Michael Watkins. Additionally, the state argues the defendant forfeited any challenge to the content of the jury instructions by failing to include his objection in his post-trial motion. For these reasons, the state asked this court to affirm. First, the trial court properly admitted the relevant testimony of Anna DeJanes. Anna DeJanes' testimony was properly admitted as a false exculpatory statement with independent probative value of the defendant's consciousness of guilt. The 4th District and the Illinois Supreme Court have consistently held that a false exculpatory statement has independent probative value of consciousness of guilt. Excuse me, good afternoon, but doesn't that have to relate, the consciousness of guilt, doesn't that have to relate to the offense with which the defendant is charged? Yes, your honor, it does. And how does that work here? Yes, your honor. So here, the defendant's statement to police, he was asked, have you ever sent a nude or similar photo to any juvenile or adult female? This covered both his conduct with Mr. DeJanes and his conduct with B.W. in this case when he said he had never sent a photo like that. Well, you heard Mr. Waller in his portion of the argument indicate, what if the officer just simply asked, have you ever committed a crime? And had such an all-encompassing question that could then, according to your argument, it would cover the crime he was charged with. Wouldn't it just open up the door in a way that Mr. Waller was suggesting? Your honor, I would argue that this case would not necessarily encompass that. And if it did, I think the court would take that into account when weighing the prejudicial impact of such a statement being admitted. Whereas, have you ever committed a crime is very broad. Whereas, have you ever which, as Mr. Waller correctly pointed out, would apply to every case. However, here, when the statement is so focused on the specific conduct in the case and not something very general just as a crime, I think that is a different situation. So what's the difference if the police are asking him, have you ever committed this or a similar offense? Why does he have an obligation to answer that? And if he does answer it, that somehow opens the door to this impeachment. Because he didn't testify, so it's not really impeachment. Your honor, two things. I think, again, it would depend on the question. I think the very fact-specific question that the officer asked the defendant here is less prejudicial just because it is so focused on the conduct very specifically in this case. And I think that is not as broad and encompassing and not as obvious. If we break it down, they've asked him whether he's ever committed an offense like this. Which he had no obligation to answer. Instead, he just gives this broad response, I've never done X before. And now they're using that as a basis to bring in separate testimony to disprove that statement, even though that's not really directly involved. That's a collateral matter. So they're impeaching him on a collateral matter and he's not even, he didn't even testify. It's trying to impeach a statement he made to the police, essentially to avoid being asked a question, asking him if he's committed this or similar offenses with other people, which he had no obligation to respond to. Why isn't that a problem? Your Honor, I would suggest that when a defendant lies to the police about his conduct and attempts to obstruct the police investigation or conceal evidence against himself, that is exactly the kind of evidence that consciousness of guilt intends to present. Transitioning back, nevertheless, defendant attempts to mischaracterize Anna DeJanes' testimony as impeachment on a collateral matter. However, DeJanes' testimony was not impeachment on a collateral matter because it was not impeachment, nor was it collateral. First, DeJanes' testimony was not impeachment. With few exceptions, only witnesses called to testify at trial can be impeached. In Obermeyer v. Northwestern Memorial Hospital, the First District stated that impeachment occurs where a witness testifies in a certain way, and the opposing party seeks to discredit that testimony through the use of other evidence. Here, the defendant did not testify at trial. Rather, the state introduced and played the video of defendant's interview with police, then called DeJanes as a witness. Thus, DeJanes' testimony was not impeachment. Even if DeJanes' testimony- Counsel, excuse me for interrupting. Sorry. We've got a lot of questions on this case. Let's accept, let's say this wasn't impeachment. The trial court here said that it was not going to admit DeJanes' testimony, except as a false exculpatory, and it wasn't going to admit it for any propensity purposes. However, isn't this testimony exactly what that was, propensity evidence, if nothing else? Your Honor, even though DeJanes' testimony created a propensity inference, it was not introduced for that purpose, and the jury was instructed to only use it for the limited purpose for which it was introduced, which was on, quote, on the issue of the truthfulness of the defendant's denial of sending pictures of his penis to other people, end quote. And the jury was instructed to only use it for that purpose, no propensity purpose. So you think that cures the prejudice here, is that right? Yes, Your Honor. I think the jury was instructed, and we have to assume that they understood that and followed it as such. Transitioning back, even if DeJanes' testimony was impeachment, it was not collateral because it was introduced as a false exculpatory statement, which had independent probative value of consciousness of guilt. A matter is collateral if it is introduced solely to contradict and is irrelevant to the substantive issues of a case. But isn't exactly, I'm sorry to keep coming back, this is, isn't exactly, isn't that what this did? It contradicted DeJanes' testimony, contradicted. What other, what else did it do? Yes, Your Honor. Mr. DeJanes' testimony certainly contradicted, but any false exculpatory statement, any false exculpatory that shows a defendant lied, in essence, contradicts just as it is. So saying that a false exculpatory is collateral would completely get rid of the idea of false exculpatories. Transitioning back, DeJanes' testimony was not introduced solely to contradict because it was irrelevant to the substantive issue of consciousness of guilt. Courts in this state, including the Fourth District, have repeatedly held that a defendant's attempts to conceal evidence against himself or obstruct a police investigation are relevant to show consciousness of guilt. Is that an exception to 404B? Is that listed? No, Your Honor, it is not specifically listed. However, Rule 404B, the listed purposes are not all encompassing. And so what's in 404B? What types of exceptions are there? So 404B would include things like intent, absence of mistake, things like that. Any purpose other than propensity is permissible under 404B. Continuing, Illinois recognizes several ways a defendant can obstruct a police investigation or conceal evidence that demonstrate consciousness of guilt. However, the only one relevant here is lying to the police. In other words, making a false exculpatory statement. During his police interview, defendant was aware the investigation focused on whether he had sent a picture of his penis to BW by falsely claiming he had never taken a pornographic photo of himself or sent a nude or similar photo to any juvenile or adult female. Defendant attempted to conceal evidence against himself and obstruct the police investigation. As a result, the defendant opened the door for the state to introduce his statement and Anna DeJanes' testimony showing he lied as false exculpatory evidence of consciousness of guilt. Thus, because DeJanes' testimony was introduced for the relevant substantive issue of consciousness of guilt, her testimony was not collateral. Additionally, DeJanes' testimony is admissible even though it disclosed defendant's prior bad acts. Other bad acts evidence is admissible to prove any material facts other than propensity that is relevant to the case. Even though... I apologize. I apologize for interrupting you, but we only have eight minutes left and I would like to ask you a question about the testimony of Pastor Watkins that was admitted by the trial court also, please. How was Watkins' opinion on whether the texts that were sent back and forth between BW and the defendant, how would his opinion of whether they would be within the rules and boundaries of the church be relevant to the elements of the crime of grooming as charged in the indictment and as set forth in the criminal code? Yes, Your Honor. So, Mr. Watkins' testimony was relevant to prove the defendant's intent. The state was under the impression that the defendant would claim that his messages with BW were within the scope of his duties as a church volunteer or he was befriending her as a church volunteer, thus... Counsel, now we're into the preemptive rebuttal that Mr. Waller mentioned. What's the authority for preemptive rebuttal? Your Honor, as a 7-11 student, I cannot say a specific case here. I would just... Let's just think about it and I'm not trying to put you on the spot to look, you know, a case or a particular rule of evidence. I'm just trying to get you to maybe look at, if you think about it logically, if the state has the right to present evidence to rebut things they think a defendant is going to testify about and the defendant then doesn't testify at all, how do you deal with that with the jury? Yes, Your Honor. So, here, even though the defendant did not testify, the defendant's counsel in opening statements indicated that these messages between BW and the defendant were merely a joke and were just a casual conversation not to be taken seriously. Which he argued in closing as well, right? Yes. Okay. So, and as well in the video in which he made the statements that was referenced earlier, the defendant repeatedly says throughout that video, this was a joke, this wasn't serious, I was just trying to befriend her, I felt bad for her, things of that nature. So, the jury did hear this interpretation of the messages even though the defendant did not testify. So, let's take it one step further then. What does the fact that he, even if it's true, what does the fact that he may or may not have violated some church policy have to do with any of that? And we don't even know that he knew about it or had been trained on it, instructed in it, but what does, what's the relevance to that at all? Yes, Your Honor. So, also in that video, the defendant mentioned his job as a church volunteer and throughout other testimony it was mentioned that the defendant was a church volunteer and worked with the youth and the defendant also in the video said something that made it sound like he might try to say he was talking to her as a church mentor volunteer from that position. And that's why you sit back and you wait until he says that and then you produce the evidence, so that you don't have the problem of tainting the jury with information that's irrelevant to anything unless or until the defendant testifies. So, that's the problem that I've got with that piece of evidence. The purpose, I understand the purpose of the evidence, it's just that our process doesn't allow you to do that. You don't get to preempt a defendant's testimony with all kinds of rebuttal evidence unless or until the defendant testifies. So, I'm trying to figure out how this is all justified. Transitioning back into this argument. So, first defendant put his intent at issue by innocently framing his messages with BW. Rule 404B says the bad act's evidence is relevant and admissible to demonstrate knowledge, intent, or absence of mistake. When a defendant puts his intent at issue by innocently framing his conduct, the state can introduce evidence to rebut that. In People v. Wilson, the Illinois Supreme Court held that a defendant puts his intent at issue when he claims he acted with innocent intent and his actions were merely misinterpreted by the victim. Although in Wilson the defendant testified, the court indicated that the defendant's counsel also put his intent at issue in opening and closing statements. Here, while defendant did not testify at trial, his intent was put at issue in at least two ways. As I discussed first in his video interview with police when he mentions his role as a church volunteer, when he mentions that these messages were merely a joke, and second when the defense counsel stated they were a joke in opening and closing statements. Thus, Michael Watkins' testimony was introduced to prove the defendant did not act with innocent intent. Additionally, Watkins' testimony was not unfairly prejudicial, even though it could be considered other bad act's evidence. Relevant other bad act's evidence may be excluded if its prejudicial effects substantially outweighs its probative value. The prejudicial effects of other bad act's evidence must include a consideration of the seriousness of the other bad act and the gravity of the charged offense. Where the other bad act is far less grotesque than the charged offense, the danger of undue prejudice is low. That is the case here. When the other bad act is breaking church volunteer guidelines and the charged offense is felony grooming, the danger of undue prejudice is low. Thus, the trial court properly admitted Watkins' relevant testimony to prove the defendant's intent to groom BW. And for the foregoing reasons, the trial court properly admitted to James and Watkins' relevant testimony. Therefore, the state respectfully asks this court to affirm. As to the second issue on jury instructions, I see my time is nearly expiring. So if this court does not have any questions, the state would stand on its brief. Thank you. I don't see any questions. Thank you, Ms. Hadley. Mr. Waller, rebuttal argument? Thank you, Your Honor. I think there's been some confusion and Ms. Hadley has done a remarkable job, I think, making the best arguments the state can make here. I did the clinic at OSAD as a law student. It's tough. But I think there's been confusion about a couple of things. First of all, what the nature of a false exculpatory statement would be. To go back to the robbery scenario, if an officer had said, we know you robbed the place. It was driven by somebody who owns a blue car. And the guy says, I don't even own a blue car. Then they can introduce, again, assuming that they somehow got this evidence in the first place. Well, no, they would be able to just bring that in because ownership of a blue car is directly tied to the offense in question here. They could bring in not only that he said that, but also registration information that he owns a blue car. That's the type of false exculpatory that is contemplated. A denial that's not necessarily directed to the elements, but it's tied to the case in some way. Did you commit this other crime a place where in defense counsel, Ms. Wong's opening, she said that these were all jokes. I don't believe she said that. The first appearance of the word joke in the ROP to me appears to be during BW's testimony. I don't see anywhere counsel put that at issue. Again, intent has to be put into issue by the defense via testimony. And if counsel does it, counsel needs to do it a lot more clearly than it ever happened in this case because defense counsel never said these were jokes and they should be taken as jokes. I think there was talk about things were punctuated by jokes, but they never said all of these comments were joking. And so therefore, the state's not going to be able to prove intent, et cetera, et cetera. Record speaks for itself. Your honors can double check that. Let's see. As far as the curative instruction, the limiting instruction, you don't take this to show he never did this before. If a limiting instruction is good enough for this case where it's just clear prior bad acts, then it's good for every case. Then we don't really need the rule about prior bad acts. I mean, the limiting instruction is not a cure-all. We can't unring the bell that he as a teenager also sent news to somebody else or that he violated church policies. The curative instruction doesn't cure quite enough here. And again, as far as the testimony about working with the youth, there was no testimony about working with the youth. Counsel, there's statements that the state introduced about him working with the youth simply so that they can impeach them. You don't get to do that. You don't get to participatorily rebut. You don't get to bootstrap otherwise inadmissible testimony simply to rebut something that's collateral or speculative. So for those reasons, again, the evidence in this close case where there was no direct inducement, nothing we could point to to say this is where he did it. There's nowhere in the prosecutor's closing argument that says this line right here, that is grooming. It all had to be taken and inferred. So it's a close case, which means plain errors at play here. It also means that there's no harmlessness to these errors. And it should all be reached. Certainly, the second issue should be, the first issue is preserved. Defense counsel raised it in her post-trial motion, I believe. The second issue is certainly reachable as plain error, either as closely balanced or because it structurally modified the elements that the state needed to prove. If there are no other questions, I thank you for your time. All right. I don't see any questions. Thank you, Mr. Waller. Thank you both. The court will take the case under advisement and will issue a written decision.